UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

| | |
|---|---|
| FRANK LIZZI, | Chapter 13 |
| | Case No. 09-10097 |
| Debtor(s). | |

---------------------------------------------------------
In re:

| | |
|---|---|
| DOROTHY DEVANE-JONES, | Chapter 13 |
| | Case No. 10-13875 |
| Debtor(s). | |

---------------------------------------------------------
APPEARANCES:

| | |
|---|---|
| O'CONNOR, O'CONNOR, BRESEE & FIRST | Michael J. O'Connor, Esq. |
| *Attorneys for Frank Lizzi and Dorothy Devane-Jones* | |
| 20 Corporate Woods Boulevard | |
| Albany, New York 12211 | |
| | |
| RICHARD S. HARTUNIAN, ESQ. | William F. Larkin, Esq. |
| United States Attorney for the | Assistant United States Attorney |
| Northern District of New York | |
| *Attorney for Internal Revenue Service* | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261-7198 | |
| | |
| KATHRYN KENEALLY, ESQ. | Steven M. Dean, Esq. |
| Assistant Attorney General | Trial Attorney, Tax Division |
| Tax Division, United States Department of Justice | |
| *Attorney for Internal Revenue Service* | |
| P.O. Box 55, Ben Franklin Station | |
| Washington, D.C. 20044 | |

Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

Currently before the court are the objections of the Internal Revenue Service ("IRS") to

motions for a hardship discharge pursuant to 11 U.S.C. § 1328(b) filed in the bankruptcy cases of

1

Frank Lizzi and Dorothy Devane-Jones (collectively, the "Debtors"), both of whom are deceased.[1] At issue is whether a deceased debtor may obtain a hardship discharge. At the conclusion of oral argument, the parties were given the opportunity to file briefs, and the matters were taken under advisement.

## JURISDICTION

This court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1) and (2)(B).

## FACTS

*The Lizzi Bankruptcy*

On January 18, 2009, Debtor Frank Lizzi filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Mr. Lizzi listed a residence with a value of $225,000.00 on schedule A of his petition. Schedule D indicates the residence is subject to two mortgages totaling $167,806.07 and real property tax liens of approximately $14,775.00. Mr. Lizzi claimed a homestead exemption on schedule C, to the full extent of the equity in his residence, pursuant to § 522[2] and applicable New York law. Mr. Lizzi listed the following personal property on schedule B: cash in the amount of $165.00; household goods valued at $2,000.00; clothing valued at $450.00; jewelry valued at $175.00; whole life insurance policies with his daughters as beneficiaries; remaining assets of a former medical practice valued at $500.00; accounts receivable of approximately $500.00; and a 1998 Buick Regal automobile valued at $2,200.00. Mr. Lizzi claimed all of his personal property as exempt, except for his jewelry and accounts receivable. At the time Mr. Lizzi's petition was filed, his monthly income, derived from unemployment and social security, was $3,599.00.

---

[1] Because these motions and the Internal Revenue Service's objections involve a determination of an identical issue, the Court consolidated the cases for purposes of oral argument and this Memorandum-Decision and Order.

[2] All section references refer to title 11 of the United States Code, and all rule references are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

It would appear that Mr. Lizzi's bankruptcy filing was precipitated by real property tax arrears owed in connection with his residence, priority tax debt owed to the IRS and New York State, as well as unsecured debt. The unsecured debt consists of a large obligation owed to a family member, student loans, and debts associated with Mr. Lizzi's prior medical practice. The IRS filed a timely proof of claim on February 6, 2009, which was subsequently amended on February 24, 2009, and again on June 19, 2009. The IRS claim consists of priority unsecured debt in the amount of $8,024.99 and general unsecured debt in the amount of $697.93 (Case No. 09-10097, Claim No. 5). Mr. Lizzi's chapter 13 plan was confirmed by order entered on June 4, 2009. The confirmed plan provides for monthly plan payments of $375.00 for 60 months with a dividend for unsecured creditors of not less than 2% or $2,278.63, the liquidation minimum,[3] whichever provides the greater distribution.

Mr. Lizzi died on March 26, 2013. Mr. Lizzi's wife predeceased him pre-petition. Prior to his death, Mr. Lizzi made 50 monthly plan payments to the trustee and funded approximately $23,540.00 into his chapter 13 plan. While the trustee has paid Mr. Lizzi's attorney and real property tax arrears, creditors holding priority claims have not been paid in full, and unsecured creditors have received nothing. Mr. Lizzi's daughters propose to pay any balance needed to satisfy the liquidation minimum required under their father's confirmed chapter 13 plan. No one has questioned the ability of Mr. Lizzi's heirs to make this payment.

*The Devane-Jones Bankruptcy*

Debtor Dorothy Devane-Jones filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 18, 2010, as a result of her business closing and her husband losing his job. On schedule A, Ms. Devane-Jones listed a residence, jointly owned with her non-filing

---

[3] The liquidation minimum represents the liquidation value of the debtor's hypothetical chapter 7 case. It is the minimum amount that creditors must receive in a chapter 13.

3

spouse, having a value of $135,000.00. According to schedule D, the residence was encumbered by two mortgages with balances totaling approximately $64,200.00. Ms. Devane-Jones claimed a homestead exemption on schedule C, to the full extent of the equity in her residence, pursuant to § 522 and applicable New York law. According to schedule B, Ms. Devane-Jones' personal property consisted of the following: cash of $35.00; joint bank account with $1,100.00; household goods valued at $2,250.00; clothing valued at $475.00; jewelry valued at $175.00; whole life insurance policy with her husband as beneficiary; 401k valued at $3,800.00; Devane Floor Covering, LLC valued at $0 because debts exceed value; one-half interest in certain stock at [Janney] Montgomery Scott, jointly owned with her husband, with her share valued at $6,740.00, and possibly subject to a tax lien; and a jointly owned 2000 Ford Focus, with her share valued at $1,950.00. Ms. Devane-Jones claimed an exemption for her automobile, 401k, household goods and wearing apparel. At the time Ms. Devane-Jones' petition was filed, she was employed as a sales associate at a shoe store and her net monthly income was $1,471.00. Her non-filing spouse's net monthly income, which was reported on schedule I and applied toward joint expenses, was $1,861.90.

     Ms. Devane-Jones' mortgages were current when she filed for bankruptcy relief, however, she had substantial debt associated with her failed business, including payroll and sales tax debt owing to the IRS and New York State. The IRS filed a timely proof of claim on November 3, 2010, which was subsequently amended on September 28, 2011, and again on April 10, 2012. The IRS claim consists of a secured portion in the amount of $16,660.73 by virtue of federal tax liens, a priority unsecured portion in the amount of $1,698.50, and a general unsecured portion in the amount of $2,363.60 (Case No. 10-13875, Claim No. 4). Ms. Devane-Jones' chapter 13 plan was confirmed by order entered on March 28, 2011. The confirmed plan

provides for monthly plan payments of $350.00, for a term of 36 months, with a dividend for unsecured creditors of not less than $1,649.00, the liquidation minimum. Ms. Devane-Jones filed a Financial Management Course Certificate on November 11, 2010 (Case No. 10-13875, ECF No. 13).

Ms. Devane-Jones died unexpectedly on March 14, 2013, approximately 29 months into her 36-month plan. Prior to her death, Ms. Devane-Jones funded approximately $11,592.50 into her chapter 13 plan. Secured and priority unsecured claims were not paid in full, nor have unsecured creditors received the minimum distribution required under the confirmed plan. Ms. Devane-Jones' surviving spouse, however, has since remitted an amount to the chapter 13 trustee sufficient to satisfy the liquidation minimum required for the unsecured creditors should a hardship discharge be granted.

While it is unknown whether an executor or administrator was appointed for either Debtor following their deaths, their attorney continues to represent their interests in this court. The pending motions acknowledge that any unpaid priority and secured claims, including those of the IRS, will survive a hardship discharge. The motions were properly served upon all creditors. The IRS filed the only objections to the motions. Mr. Lizzi's largest unsecured creditor, although a relative, indicated his consent to the relief requested.

**ARGUMENT**

Counsel for the Debtors asserts that the Debtors' chapter 13 cases should proceed despite their deaths and urges the court to grant a hardship discharge. Counsel submits that the Debtors have satisfied the requirements for a hardship discharge because neither Debtor can be held accountable for not being able to complete their chapter 13 plans, unsecured creditors in both

5

cases will receive as much as they would have received had the Debtors filed petitions under chapter 7, and modification of their respective chapter 13 plans is now impracticable.

The IRS asserts that a hardship discharge may not be granted to a deceased debtor or to a deceased debtor's probate estate pursuant to § 1328(b) and Federal Rule of Bankruptcy Procedure 1016. The IRS argues that once a chapter 13 debtor dies, the dual purposes of bankruptcy—to provide a debtor a fresh start and to pay creditors—are no longer relevant considerations. In fact, the IRS contends creditors would be better served by dismissal of the cases and the creditors' claims being resolved through the probate process. Moreover, according to the IRS, granting a hardship discharge would have no economic effect on the Debtors as they are no longer "personally" liable for their debts. Therefore, the IRS concludes, any action taken by the court, other than dismissal, would amount to nothing more than an academic exercise.[4]

## DISCUSSION

*Hardship Discharge Under § 1328(b)*

The court may grant a discharge to a debtor that has not completed payments under a confirmed chapter 13 plan only if—

> (1) the debtor's failure to complete such payment is due to circumstances for which the debtor should not justly be held accountable;
>
> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). A discharge issued pursuant to § 1328(b) is often referred to as a "hardship discharge." The debtor has the burden of proving the requirements of § 1328(b) are fulfilled.

---

[4] The IRS asserts that conversion to chapter 7 may be warranted in some circumstances upon the death of a debtor. The IRS also acknowledges that courts are split on whether the case of a deceased debtor may be converted. However, as neither the Debtors nor the IRS are seeking conversion, the court will not address this argument.

*Bandilli v. Boyajian (In re Bandilli)*, 231 B.R. 836, 839 (B.A.P. 1st Cir. 1999). The subsections of § 1328(b) are written in the conjunctive; thus, a debtor must satisfy all three requirements of § 1328(b). *In re Cummins*, 266 B.R. 852, 855 (Bankr. N.D. Iowa 2001) (citation omitted). Moreover, use of the word "may" in the statue indicates the granting of a hardship discharge is within the discretion of the court. *In re Bandilli*, 231 B.R. at 836. Therefore, even if the three requirements are proven, in reaching a determination, the court should consider the particular facts and circumstances of each case. *In re Perkins*, 381 B.R. 530, 537 (Bankr. S.D. Ill. 2007).

While § 1328(b) does not address the impact of a debtor's death on the issuance of a hardship discharge, Federal Rule of Bankruptcy Procedure 1016 sets forth the effect a debtor's death may have on a bankruptcy case.

> Death . . . of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event, the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death . . . had not occurred. . . . If a[n] . . . individual's debt adjustment case is pending under . . . chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death . . . had not occurred.

Fed. R. Bankr. P. 1016.

As a practical matter, in most chapter 13 cases, the death of a debtor will result in dismissal of the case because there is no future income from which to fund the debtor's plan. *In re Alvarez Diaz*, No. 03-04398 SEK, 2006 WL 3898315, at *2 (Bankr. D. Puerto Rico July 5, 2006) (citing 9 Collier on Bankruptcy ¶ 1016.04 (15th ed. rev.)). Other outcomes, however, may be possible:

> If all the required plan payments were made before the debtor died, it may be appropriate to enter a discharge, 11 U.S.C. § 1328(a), if not, a hardship discharge might be available, 11 U.S.C. § 1328(b), *In re Bond*, 36 B.R. 49 (Bankr. E.D.N.C. 1984), *In re RedWine*, 2011 WL 1116783 (Bankr. N.D. Ga. 2011); finally, if the plan's funding is not dependent upon the debtor's earned income, it might be

7

>preferable ("in the best interests of the parties") to simply let whatever it was that had been set in motion continue.

*In re Shepherd*, 490 B.R. 338, 340 (Bankr. N.D. Ind. 2013); *see In re Bouton*, No. 10-40989-EJC, 2013 WL 5536212, at *1 (Bankr. S.D. Ga. Oct. 7, 2013) (citing *In re Perkins*, 381 B.R. 530) (death of a debtor does not necessarily preclude entry of a discharge).

Contrary to the IRS's position, there is nothing in the Code prohibiting a deceased debtor from receiving a hardship discharge. Because entry of a discharge is the normal conclusion for a chapter 13 case, in allowing a case to "proceed and be concluded . . . as though the death had not occurred," Rule 1016 permits a discharge even where a debtor is deceased. *In re Perkins*, 381 B.R. at 532 (quoting Fed. R. Bankr. P. 1016); *In re Fuller*, No. 05-18831, 2010 WL 1463150 (Bankr. D. Col. March 11, 2010) (discharge granted to deceased debtor where non-filing spouse completed payments under debtor's confirmed plan). Continuing with this logic, "further administration" of a deceased debtor's bankruptcy estate includes entry of a hardship discharge because if the death had not occurred, the case could proceed to two possible conclusions: (1) the debtor could have received their discharge by making the required plan payments, or (2) the debtor could have been granted a hardship discharge. *In re RedWine*, 2011 WL 1116783, at *1 (citing *In re Bond*, 36 B.R. at 51); *In re Bevelot*, No. 05-36051, 2007 WL 4191926 (Bankr. S.D. Ill. Nov. 21, 2007). A majority of courts agree that a hardship discharge is available to a deceased debtor. *In re Kosinski*, No. 10 bk 28949, 2015 WL 1177691, at *2 (Bankr. N.D. Ill. Mar. 5, 2015) (Rule 1016 allows deceased debtor's case to proceed under any avenue that would have been available had debtor survived, including the granting of a hardship discharge); *In re Dickerson*, No.10-60680, 2012 WL 734160, at *2 (Bankr. N.D. Ohio Mar. 6, 2012) (entry of a hardship discharge to deceased debtor is not precluded under Federal Rule of Bankruptcy Procedure 1016); *In re Bond*, 36 B.R. 49 (hardship discharge for deceased debtor granted where

8

debtor made all plan payments until her death and dismissal would have penalized debtor's children); *In re Graham*, 63 B.R. 95 (Bankr. E.D. Pa. 1986) (motion for hardship discharge may be the only viable option if chapter 13 case is to continue after debtor's death).

There is one line of authority that holds a hardship discharge under § 1328(b) is not available to a deceased debtor because such result conflicts with Rule 1016. *In re Miller*, AP No. 13-cv-03043-REB, 2014 WL 4723881, at *3 (D.Colo. Sept. 23, 2014); *In re Hennessy*, No. 11-13793, 2013 WL 3939886 (Bankr. N.D. Cal. July 29, 2013). According to these cases, if the debtor's death is the basis of the hardship discharge, such that the hardship discharge could not have been sought if the debtor never died, the case could not be found to have proceeded in the same manner "as though the death . . . had not occurred," which is a requirement of Rule 1016. In *Miller*, the bankruptcy court dismissed the debtor's chapter 13 case finding that the case could not proceed as if the debtor had not died because plan payments could not be made without his earnings. *In re Miller*, 2014 WL 4723881. Likewise, the *Hennessy* court dismissed a deceased debtor's chapter 13 case rather than grant a hardship discharge. *In re Hennessy*, 2013 WL 3939886. In *Hennessy*, the court noted that Rule 1016 provides for two options after a debtor dies, dismissal or proceeding as if the death had not occurred, and that a hardship discharge did not fall under either option. *Id.* at *1. As the debtor's death formed the basis for the hardship discharge, the court held it was contrary to Rule 1016. *Id.* This narrow reading of Rule 1016 by the *Miller* and *Hennessy* courts impinges on a debtor's substantive right under § 1328(b) because, by its terms, § 1328(b) does not limit who may apply for a hardship discharge to any particular parties. *In re Kosinki*, 2015 WL 1177691, at *3. As the Federal Rules of Bankruptcy Procedure "shall not abridge, enlarge, or modify any substantive right," 28 U.S.C. § 2705, the court respectfully disagrees with the reasoning of *Miller* and *Hennessy*.

9

In support of its arguments for dismissal of these cases, the IRS contends that a discharge becomes a moot point for a deceased debtor because there is no longer "personal" liability for debts, rather liability transfers to the decedent's probate estate. The IRS asserts that a probate estate, however, may not receive a hardship discharge, as a probate estate may not be a debtor under the Bankruptcy Code. It appears the IRS is arguing that upon a debtor's death, his probate estate is automatically substituted into the case to serve as the debtor. While Federal Rule of Civil Procedure 25 addresses substitution of parties and is applicable to adversary proceedings and contested matters, there is no mechanism for substituting an entity for a debtor in the bankruptcy case itself. Fed. R. Civ. P. 25; Fed. R. Bankr. P. 7025. In neither case *sub judice* has an entity sought to be substituted for the Debtors. This court is not inclined to hold substitution could occur automatically, even for a deceased debtor, absent any basis in the Code. Moreover, eligibility is determined at the commencement of a case, and no one is contesting that when these cases were commenced, the Debtors, both individuals, were eligible for chapter 13 relief. *In re Perkins*, 381 B.R. at 536. Thus, the court finds that substitution did not occur in these cases, nor was it necessary. *See In re Shepherd*, 490 B.R. at 340 (seeking a hardship discharge for a deceased debtor does not require replacing the debtor with another entity).

For the reasons discussed above, the court's analysis begins with the proposition followed by a majority of the courts, that death does not foreclose a debtor's right to receive a hardship discharge. Here, both Debtors funded substantial amounts into their plans and made payments up until the time of their deaths. Their failures to complete their plans—due to their deaths—is, of course, not something they can be held accountable for. Additionally, the value to be paid out under their plans to unsecured creditors is not less than the amount unsecured creditors would have received had the Debtors filed for relief under chapter 7. Lastly,

modification of the Debtors' plans is not possible as the Debtors are deceased, and there is no longer a regular source of income to fund their plans. Thus, the court finds that the debtors have satisfied their burden of demonstrating all the requirements for a hardship discharge under § 1328(b) are satisfied.

While the IRS contends both cases should be dismissed under Rule 1016, the IRS has not articulated a sound argument as to why further administration is not in the best interest of the parties. If further administration is permitted, in both cases, the Debtors' heirs indicated a willingness to pay a lump sum to the chapter 13 trustee equal to the liquidation minimum for the benefit of unsecured creditors. Thus, if the Debtors are granted hardship discharges, unsecured creditors will receive a distribution equal to what they would have received had the Debtors filed chapter 7, as opposed to a dividend of zero if the cases are dismissed. There is also no indication that there will be a probate estate for either Debtor or evidence that creditors would fare better in the probate process if the cases were dismissed. Both Debtors sought bankruptcy relief due to financial stress associated with their businesses. Both Debtors had modest assets and modest income. In both cases, the only asset with value was the homestead. In the case of Mr. Lizzi, his exempt equity at the time of filing was approximately $40,000. This calculation does not take into account any federal tax lien the IRS may assert in connection with its priority tax claim should Mr. Lizzi's case be dismissed or a hardship discharge granted. Ms. Devane-Jones held her homestead jointly with her non-filing spouse. Upon Ms. Devane-Jones' death, her share of any equity would pass to her husband through his right of survivorship.[5]

To the extent the Debtors have post-petition creditors, they will not be affected by a hardship discharge. Additionally, claims of secured and priority creditors will survive a hardship

---

[5] For purposes of this decision, it is not necessary for the court to determine if Mrs. Devane-Jones and her husband held the homestead as joint tenants or tenancy by the entirety as both tenancies are subject to a right of survivorship under New York law.

11

discharge. As for unsecured creditors, the court is convinced they fare better receiving something from the chapter 13 trustee, rather than the likely potential for nothing if the cases are dismissed.

Policy considerations also support granting the Debtors a hardship discharge. If the Debtors had filed under chapter 7 and died before their discharges were issued, their cases would have proceeded and their discharges issued "as though the death[s] . . . had not occurred." Fed R. Bankr. P. 1016. The result should not be different for a deceased chapter 13 debtor entitled to a discharge because either all payments were completed under a confirmed plan or a hardship discharge was proper under § 1328(b). Chapter 13 is a voluntary process. Often a debtor is in a position to choose between liquidation under chapter 7—a fresh start without payment—and reorganization under chapter 13. Both Debtors were below median debtors based upon the Means Tests filed with their petitions. By filing under chapter 13, the Debtors chose to voluntarily pay back otherwise dischargeable debts to their creditors. The Debtors died within 10 months and 7 months, respectively, of completing their 60-month and 36-month plans. They should be commended for attempting to pay their debts through chapter 13. Denying the Debtors the benefit of a hardship discharge would amount to penalizing them for having attempted to reorganize. *See In re Bond*, 36 B.R. at 51-52.

Based upon all of the foregoing, the court concludes further administration of these estates is possible and in the best interest of the parties. Granting the Debtors a hardship discharge is, therefore, appropriate should other pre-conditions to obtaining a discharge, as discussed below, be satisfied.

***Prerequisites for a Discharge Post-BAPCPA***

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added additional conditions that must be satisfied prior to a court granting a debtor a chapter 13 discharge.  The debtor must certify that all domestic support obligations are paid (11 U.S.C. § 1328(a)[6]), and the court must make certain findings regarding § 522(q) (11 U.S.C. 1328(h)[7]) and prior discharges (11 U.S.C. § 1328(f)[8]).  Additionally, the debtor must complete an instructional course concerning financial management.  11 U.S.C. § 1328(g).  In the Northern District of New York, to assist the court in confirming that it has the authority to grant a discharge, Local Bankruptcy Rule 4004-1(b)(1) requires a debtor to file within 30 days of the filing of the Trustee's Final Report the *Debtor's Certification of Completion of Instructional Course Concerning Financial Management* (Official Form B23) and *Chapter 13 Debtor(s) Certifications Regarding Domestic Support Obligations and Sections 522(q) and 1328* (Local Form O1328C) ("*Chapter 13 Debtor's Certifications Form*") under penalties of perjury.  Similarly, Local Bankruptcy Rule 4004-2(b) requires the *Chapter 13 Debtor's Certifications Form* to be filed by a debtor as a prerequisite to the issuance of a hardship discharge under

---

[6] Section 1328(a) states the discharge provisions available to a chapter 13 debtor *who has completed all plan payments* and requires a debtor that owes a domestic support obligation, in order to receive a discharge under that subsection, certify that all amounts required to be paid under a judicial or administrative order, or by statute, prior to the certification have been paid.  11 U.S.C. § 1328(a) (emphasis added).  As the Debtors are seeking hardship discharges under § 1328(b), the § 1328(a) certification is not required in these cases.

[7] Section 1328(h) provides:
> The court may not grant s discharge under this chapter unless the court after notice and a hearing . . . finds that there is no reasonable cause to believe that—
> (1) section 522(q)(1) may be applicable to the debtor; and
> (2) there is pending any proceedings in which the debtor may be found guilty of a felony of the described in section 522(q)(1)(A0 or liable for a debt of the kind described in section 522(q)(1)(B).

11 U.S.C. § 1328(h)

[8] The debtor is not eligible for a chapter 13 discharge if the debtor received a discharge "in a case filed under chapter 7, 11, or 12 . . . during the 4-year period preceding the date of the order for relief under this chapter, or in a case filed under chapter 13 . . . during the 2-year period preceding the date of such order.  11 U.S.C. § 1328)f).

13

§ 1328(b). While Mrs. Devane-Jones filed a *Debtor's Certification of Completion of Instructional Course Concerning Financial Management* prior to her death,[9] Mr. Lizzi did not. Thus, Debtors' counsel is seeking a waiver of the personal financial management course for Mr. Lizzi. In addition, he is seeking a waiver of the *Chapter 13 Debtor's Certifications Form* under Local Bankruptcy Rule 4004-2(b) for both Debtors.

Section 1328(g) provides that the requirement that a course in financial management be completed prior to discharge "shall not apply with respect to a debtor who is a person described in section 109(h)(4)." 11 U.S.C. § 1328(g)(2). Under § 109(h)(4), a debtor may be excused from completing a financial management instructional course if the court determines, after notice and hearing, the debtor is unable to complete the course because of "incapacity, disability, or active military duty in a military combat zone." 11 U.S.C. § 109(h)(4). For purposes of § 109(h)(4),

> [I]ncapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and 'disability' means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing. . . .

*Id*.

Mr. Lizzi is not in the military, nor is he suffering a mental illness or mental deficiency. Thus, the narrow issue before the court is whether Mr. Lizzi's death is a basis to find that he is disabled such that he is "so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing." 11 U.S.C. § 109(h)(4).

---

[9] *See supra* p.5.

The court agrees with the rationale of those courts that have found death to be a "disability" under § 109(h)(4). *In re Bouton*, 2013 WL 5536212, at *2; *In re Trembulak*, 362 B.R. 205 (Bankr D.N.J. 2007). As Judge Clark noted:

> [I]t is odd to think of death as a "mere disability," but the statutory language (added in 2005) seems not to have anticipated the possibility that debtor might die after filing but before completing the mandated instructional course. Still, the intent of Congress seems obvious at least from its context, if not from its express wording."

*In re Henderson*, No. 06-52439-C, 2008 WL 1740529, at *1 (Bankr. W.D. Tex. Apr. 9, 2008). This interpretation is consistent with the inherent purpose of the requirement that a debtor complete a financial management course to prevent a future reoccurrence of financial trouble, which is rendered both meaningless and impossible where the debtor is deceased. *In re Trembulak*, 362 B.R. at 207. Therefore, the court waives the requirements of § 1328(g) as to Mr. Lizzi.

There are no provisions in the Code permitting the debtor to forego compliance with § 1328(f) and (h) prior to obtaining a discharge in a chapter 13 case whether the discharge is issued under § 1328(a) or (b). Local Bankruptcy Rules 4004-1(b)(1) and 4004-2(b) facilitate verifying a debtor's eligibility to receive a chapter 13 discharge by having the debtor make certifications, under penalties of perjury, regarding: domestic support obligations pursuant to § 1328(a);[10] prior discharges pursuant to § 1328(f); § 522(q)(1) and the pendency of an action in which the debtor may be found guilty of certain felonies or liable for certain debts set forth in § 522(q)(1)(B) pursuant to § 1328(h); and the completion of a financial management course pursuant to § 1328(g).

---

[10] The court has only one *Chapter 13 Debtor(s) Certifications Regarding Domestic Support Obligations and Sections 522(q) and 1328* form (Local Form O1328C) regardless of whether a debtor is seeking a discharge under § 1328(a) or (b). As a result, there is a certification on the form relevant with respect to a discharge under § 1328(a), but not (b).

15

The Code does not require the debtor to certify as to § 522(q) and prior discharges.  The *Chapter 13 Debtor's Certifications Form* adopted by the court is used to assist the court in making the findings necessary to issue a discharge.  While a deceased debtor can no longer complete the *Chapter 13 Debtor's Certifications Form* pursuant to Local Bankruptcy Rule 4004-2(b), someone with personal knowledge should be able to make the necessary "end of case" representations in an affidavit so that the court can determine whether the Debtor complied with § 1328(f) and (h).  A PACER search should be able to confirm whether either Debtor received a bankruptcy discharge in the last four years to satisfy § 1328(f).  Likewise, it would appear from the Debtors' schedules A and C that both claimed homestead exemptions under New York State law in amounts less than $155,675 and, thus, § 522(q) may not be applicable to either Debtor.  Thus, while it may be proper for the court to waive the certifications required under Local Bankruptcy Rule 4004-2(b), the record is incomplete for it to do so at this juncture.

## CONCLUSION

Based upon all the foregoing, it is hereby

**ORDERED**, that the request of Mr. Lizzi for a waiver of the requirements under § 1328(g)(1) for completing an instructional course concerning personal financial management and filing *Debtor's Certification of Completion of Instructional Course Concerning Financial Management* (Official Form B23) under Local Bankruptcy Rule 4004-2(b) is granted; and it is further

**ORDERED**, that a supplemental affidavit shall be filed in the case of Mr. Lizzi and in the case of Ms. Devane-Jones not later than 14 days from entry of this Memorandum-Decision and Order in further support of their respective requests for a waiver of *Chapter 13 Debtor(s) Certifications Regarding Domestic Support Obligations and Sections 522(q) and 1328* (Local

Form O1328C) required under Local Bankruptcy Rule 4004-2(b) consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Mr. Lizzi and Ms. Devane-Jones shall each be granted a hardship discharge pursuant to 11 U.S.C. § 1328(b) subject to the following conditions:

1. The Debtors must obtain a waiver of *Chapter 13 Debtor(s) Certifications Regarding Domestic Support Obligations and Sections 522(q) and 1328* (Local Form O1328C) required under Local Bankruptcy Rule 4004-2(b); and

2. Any balance due to satisfy the liquidation minimum under the Debtors' confirmed chapter 13 plans shall be paid to the chapter 13 trustee not later than 14 days from entry of this Memorandum-Decision and Order; and

3. Any final order awarding a hardship discharge shall specify that any unpaid secured and priority unsecured claims shall survive the hardship discharge; and it is further

**ORDERED**, that these motions shall be adjourned to **April 30, 2015 at 11:00 a.m.** for a final order granting a hardship discharge or granting dismissal depending on whether the terms of the decretal paragraphs of this Memorandum-Decision & Order are complied with.

Dated: April 3, 2015                                   /s/Robert E. Littlefield, Jr.
Albany, New York                                       Robert E. Littlefield, Jr.
                                                       United States Bankruptcy Judge